**NATIONAL LABOR RELATIONS BOARD
v. STACKPOLE CARBON CO.**

No. 6830.

Circuit Court of Appeals, Third Circuit.
Argued Feb. 27, 1942.

Decided April 30, 1942.

M. Louise Rutherford, Dep. Atty. Gen., for Commonwealth of Pennsylvania (Martin J. Coyne, Asst. Deputy Atty. Gen., Julius H. Tolson, Sp. Deputy Atty. Gen., and Claude T. Reno, Atty. Gen., for Commonwealth of Pennsylvania, on the brief), for petitioner.

A. Norman Somers, of Washington, D. C. (Robert B. Watts, Gen. Counsel, Ernest A. Gross, Associate Gen. Counsel, Gerhard P. Van Arkel, Asst. Gen. Counsel, Ralph Winkler, and Leslie Clifford, all of Washington, D. C., Attys., National Labor Relations Board, on the brief), for respondent.

Before BIGGS, MARIS, CLARK, JONES and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

This case arises on a petition filed by the National Labor Relations Board for a rule to show cause why certain purported assignments to the Department of Public Assistance of the Commonwealth of Pennsylvania of back pay by employees of Stackpole Carbon Company should not be declared invalid and of no effect against the Board and its agents. The rule issued. The respondents under the rule, the Commonwealth and the Department, filed an answer and argument was had. The facts are not in dispute. It appears that back pay is due to these employees under an order of the National Labor Relations Board which this court enforced by a decree. See 105 F.2d 167, 177, certiorari denied 308 U.S. 605, 60 S.Ct. 142, 84 L.Ed. 506. The proceeding at bar is ancillary to the main proceeding which arose under Section 10(c) of the National Labor Relations Act, 29 U.S.C.A. § 160(c). The controversy presently at bar raises the question whether the order of the Board directing payment of back wages to workmen may be affected by the assignments and, if so, to what extent.

The Commonwealth of Pennsylvania, the Department of Public Assistance and the public officials of the Commonwealth charged with responsibility under the "Public Assistance Law", the Act of June 24, 1937, P.L. 2051, 62 P.S. § 2501 and "The Support Law", the Act of June 24, 1937, P.L. 2045, 62 P.S. § 1971, by answer have submitted to this court's jurisdiction and have asked for the determination of the issues.

■ The pertinent facts may be stated as follows. Pursuant to a stipulation entered into between the Board and the Company after the entry of our decree, the Company deposited to an account entitled "Stackpole Carbon Company Labor Board Account, Regional Director, Sixth Region, National Labor Relations Board, Trustee" in a bank at St. Marys, Pennsylvania, the sum of $50,000 to be distributed in stipulated amounts, in twelve instalments from December 13, 1940 to November 13, 1941, to the employees of Stackpole named in a list attached to the stipulation. Since we ordered the stipulation filed in substance we approved it and its provisions therefore have the effect of a decree entered in the proceedings.

Some of the employees of Stackpole, including many of the employees named in the stipulation, executed assignments of back wages. Each contains a recital stating that the employee is presently anticipating the receipt of back wages from the Company and that, in consideration of the employee's indebtedness to the Commonwealth for assistance given to him by the Department, the employee transfers and assigns to the Department "such part of my salary, now due or to become due from said employer, as would have been received concurrently with assistance, had the wages been paid in the usual method of payment and, as shall be necessary to repay the total amount of assistance * * *."

Both the Board and the Department take the position that this court has jurisdiction to determine the controversy. The Board cites Section 274d of the Judicial Code, 28 U.S.C.A. § 400, the Declaratory Judgments Act, and asserts that the instructions prayed for by the Board are necessary to effectuate this court's decree and the provisions of the stipulation; that therefore the relief sought by the Board is within our jurisdiction and we may exercise the powers conferred upon us by Section 262 of the Judicial Code, the All Writs Section, 28 U.S.C.A. § 377, to preserve that jurisdiction.

■ We have jurisdiction to effectuate our own decree and it is unnecessary in the case at bar to evoke the provisions of the All Writs Section. In the case at bar by our decree and the stipulation, complied with by the Company, a fund was created from which Stackpole's workmen were to be paid in accordance with the Board's order.

The Commonwealth and the Department concede that no "private" right of action is created in employees under Section 10(c) of the Act, but both take the position that as a result of the Board's awards enforced by the decree of this court, a "private" substantive right vested in each of the workmen to the sum awarded him by the Board and that the workman could assign, sell or dispose of that right in any way that he saw fit. To put this in other words, the Commonwealth and the Department contend that once the Board has required reimbursement to the employee for back wages and the employer has carried out the provisions of the order, at least to the extent in the case at bar, the duty of the

Board is at an end. The Board has fulfilled its duty under the Act and the claim of a workman for back wages becomes like any other claim which comes into his hands.

Numerous cases are cited by the Commonwealth and the Department but none of them bears out their contentions. Two Supreme Court cases, however, one of them cited by the respondents under the rule, and a decision of this court, point the other way. We will discuss these first.

In Amalgamated Utility Workers v. Consolidated Edison Company, 309 U.S. 261, 267–269, 60 S.Ct. 561, 564, 84 L.Ed. 738, Mr. Chief Justice Hughes held that the Board is a public agency which can act only in the public interest as an instrument to assure employees protection from unfair conduct in order to remove obstructions to interstate commerce. He quoted from the report by the Committee on Labor of the House of Representatives upon the bill (See H.R. No. 972, 74th Cong., 1st Sess., p. 21) as follows, "No private right of action is contemplated [by the bill]. Essentially the unfair labor practices listed are matters of public concern, by their nature and consequences, present or potential; the proceeding is in the name of the Board, upon the Board's formal complaint. The form of injunctive and affirmative order is necessary to effectuate the purpose of the bill to remove obstructions to interstate commerce which are by the law declared to be detrimental to the public weal."

In National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 362, 60 S.Ct. 569, 576, 84 L.Ed. 799, Mr. Justice Stone said, "The proceeding authorized to be taken by the Board under the National Labor Relations Act is not for the adjudication of private rights. * * * It has few of the indicia of a private litigation and makes no requirement for the presence in it of any private party other than the employer charged with an unfair labor practice. The Board acts in a public capacity to give effect to the declared public policy of the Act to eliminate and prevent obstructions to interstate commerce by encouraging collective bargaining and by protecting the 'exercise by workers of full freedom of association, self-organization, * * *'."

In National Labor Relations Board v. Newark Morning L. Co., 3 Cir., 120 F.2d 262, 268, 137 A.L.R. 849, this court, passing upon the right of an employee to reinstatement with back pay stated its conclusion

that rights under the Act were public rights, though expressly reserving judgment upon the question whether the law of New Jersey might afford the claimant in the cited case a forum for the redress of her private grievances. We indicated our belief that the Board has exclusive jurisdiction to enforce the provisions of the Act, citing the provisions of Section 10(a) that the power of the Board to prevent unfair labor practices is "exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law, or otherwise."

The Commonwealth and the Department cite National Labor Relations Board v. Killoren, 8 Cir., 122 F.2d 609, 613, 614, 137 A.L.R. 510, certiorari denied 62 S.Ct. 412, 86 L.Ed. ——, in support of the proposition that back-pay awards prescribed by the Act are wages, but in the cited case the court did no more than assimilate back-pay awards to that section of the Bankruptcy Act as amended which gives wages preference. See Section 64, sub. a(2), 11 U.S.C.A. § 104, sub. a(2).

In National Labor Relations Board v. Hearst, 9 Cir., 102 F.2d 658, also cited by the respondents under the rule, the court held merely that when an award of back pay is made to an employee who dies, his personal representative is entitled to receive it.

In National Labor Relations Board v. American Potash & Chemical Corporation, 9 Cir., 113 F.2d 232, 234, 129 A.L.R. 874, after the entry of a decree by the court of appeals enforcing an order of the Board requiring reinstatement of certain employees with back pay, the employer offered its employees bonuses to resign their rights to reinstatement. The company was found guilty of contempt. The Court stated, "The duty of an employer to reinstate arises from the statute's specific provision for such a mandate to effectuate the purposes of the Act * * *. That purpose is not effectuated by a mere giving of a private right to the unemployed man to be surrendered for a price. The primary purpose is not to create a remedy in the discharged employees. It is to safeguard the employees' right, declared in section 1 of the Act [29 U.S.C.A. § 151], to self-organize or join an existing labor organization * * *." Obviously this decision supports the position of the Labor Board rather than of its opponents.

The case of National Labor Relations Board v. Carlisle Lumber Co., 9 Cir., 108 F. 2d 188, does not support the proposition asserted by the respondents; viz. that the Board allowed the employer to set-off debts due to it by employees entitled to back pay. From the reported decision it appears only that the company was allegedly insolvent and had not paid the awards. The court, in a contempt proceeding, appointed a master to report how the employer could meet the requirement of the Board's order.

In Continental Oil Company v. National Labor Relations Board, 10 Cir., 113 F.2d 473, 485 the court held that the Act creates a legal right in the employee and authorizes the Board as a remedial measure to require his reinstatement with back pay. The court ruled also that the Board could require the employer to give to the employee relief reasonably adapted to redress the wrongs done to him by reason of the employer's unfair labor practices, including the restoration of the insurance rights of the discharged employee. This conclusion seems to us to be in line with the purposes of the Act for the insurance rights in substance were part of the employee's wages.

The Board for its part relies principally upon the decision of the Circuit Court of Appeals for the Ninth Circuit in National Labor Relations Board v. Sunshine Mining Company, 125 F.2d 757. In this case after the Board made awards of back pay to employees of the Sunshine Company, the Board's order was enforced by a decree of the court. Numerous persons sought to collect from the Company sums due them from Sunshine employees included in the Board's order. Most of these persons sought money judgments against some of these employees and many procured writs of attachment or garnishment in the Idaho state courts. Former wives of employees, who had secured decrees of divorce in the Idaho courts, obtained orders therein restraining Sunshine from paying to these employees the back wages due them. In another divorce case the Idaho court gave to the wife as her sole and separate property her husband's claim against Sunshine.

To avoid this confusion, the Board presented a petition to the circuit court of appeals praying for an order restraining all persons named in the petition from instituting, prosecuting or maintaining any action or proceeding or invoking any process to carry into effect these writs and injunctions against the Sunshine Company. The court granted the relief which the Board sought, one judge dissenting. It will be observed that the relief which the Board sought in the cited case was broader than that prayed for in the case at bar for in the Sunshine case there was no fund and it was necessary for the court to employ the provisions of Section 262 of the Judicial Code in order to issue its injunction. Moreover, it was necessary for the court to construe the decisions of the Supreme Court in Toucey v. New York Life Insurance Company, 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. —, 137 A.L.R. 967, and Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077, so as to permit the issuance of the injunction despite the provisions of Section 265 of the Judicial Code, 28 U.S.C.A. § 379, providing that no injunction shall issue from a court of the United States to stay proceedings in a state court except as authorized under the Bankruptcy Act. The majority of the court concluded that the proceedings of the Board whereby back-pay awards were issued presented an analogy to proceedings in rem, holding, therefore, that the circumstances were within the last exception set up in the Toucey case. The view of the dissenting judge was to the contrary. He concluded that there was no res and that therefore the sixth exception to the general rule embodied in the Toucey case was inapplicable.

Our task of decision is easier than that which confronted the Court of Appeals for the Ninth Circuit. In the case at bar, there is a trust fund created by Stackpole pursuant to the stipulation and deposited to the credit of the Board's Regional Director. Clearly this fund is subject to our jurisdiction. There is no need to attempt to enjoin action in any state court. The case at bar therefore is free of many of the distracting elements of the Sunshine case. Nor can we see any reason to invoke the Declaratory Judgments Act. We are called upon simply to effectuate the Board's order and our own decree.

We conclude that if the purposes of the Labor Act are to be effected the right of the employee to a back pay award must be deemed to be a public right. The award can be ordered only by the Board in the exercise of its statutory power in the public interest. When the Board has made such an award, then the employer must fulfill it as a necessary condition of labor peace in order to avoid interference with interstate commerce. The Board's order

cannot be deemed to be complied with by the employer until the employee to whom the award is due has received his money.

The money paid to the employee has no private character whatsoever until it is in the employee's hands. He is paid as a result of the functioning of a public body carrying out the intent of Congress. The right to the award is a public right. But as a matter of policy to compel the employer to answer innumerable garnishments or writs of injunctions as the result of suits brought to recover sums due from individual workmen, would be to hamstring the Act and prevent its effective functioning. In this respect an agency of a state can have no higher standing than a private suitor.

All the decisions look in the direction which we have indicated. In addition to those cases which we have cited see Waterman S. S. Corp. v. National Labor Relations Board, 5 Cir., 119 F.2d 760, 762, wherein the court stated, "The requirement in the Board's order to make whole the men who were illegally discharged was not made to vindicate the private rights of the men, but the policies of the National Labor Relations Act * * *", citing the early case of Agwilines, Inc., v. National Labor Relations Board, 5 Cir., 87 F.2d 146, 147.

The ruling in the Sunshine case is in point. The decision is well reasoned and we will follow it.

The relief sought by the Board will be granted and the rule will be made absolute.

CLARK, Circuit Judge, took no part in the decision of this case.